**TRENK ISABEL SIDDIQI**
**& SHAHDANIAN P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone:  (973) 533-1000
Email:  rtrenk@trenkisabel.law
Email:  rroglieri@trenkisabel.law

*Proposed Counsel to JFM Sparta, LLC d/b/a Burger King*
*Chapter 11 Debtor and Debtor-in-Possession*

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>JFM SPARTA, LLC, d/b/a Burger King,<br><br>        Debtor. | Chapter 11<br><br>Case No. 26-15275 (JKS) |

### DECLARATION OF PRESIDENT RANJANA JETHWA IN SUPPORT OF CHAPTER 11 FILING AND FIRST DAY MATTERS

**RANJANA JETHWA,** of full age, pursuant to 28 U.S.C. § 1746, hereby certifies and declares as follows:

1.      I am the President of JFM Sparta LLC d/b/a Burger King ("**JFM Sparta**"), the chapter 11 debtor and debtor-in-possession in the above-captioned case.  I am fully familiar with the business and affairs of JFM Sparta, including the facts and circumstances set forth herein.

2.      I submit this declaration (the "**Declaration**") in support of JFM Sparta's voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and the relief that JFM Sparta has requested from the Court in various motions and applications filed contemporaneously herewith (the "**First-Day Pleadings**").  The relief sought in each of the

1

First-Day Pleadings: (1) is necessary to enable JFM Sparta to operate in Chapter 11 with minimal disruption to its operations and without loss of value; and (2) best serves the interests of JFM Sparta's estate, creditors, and other parties in interest.

3.    Except as otherwise indicated, the facts set forth in this Declaration are based on my personal knowledge, information supplied to me by other members of JFM Sparta's management or its professionals, information learned from my review of relevant documents, or my opinion based upon my experience and knowledge of JFM Sparta's operations and financial condition.  This Declaration is intended to provide a brief background of JFM Sparta's, a description of JFM Sparta and its services, the reasons for JFM Sparta's chapter 11 filing, JFM Sparta's objectives in the chapter 11 process, and a summary of the relief sought in each of the First-Day Pleadings.

4.    If called as a witness in JFM Sparta's Chapter 11 proceedings, I would testify to the best of my knowledge competently to the facts set forth in this Declaration.  Unless otherwise indicated, all financial information set forth in this Declaration is presented on an unaudited basis.

**Personal Background**

5.    I was born on December 14, 1952 and am currently 73 years old.

6.    I was born in Poona, India.

7.    I grew up in Bombay with my parents.

8.    I graduated with a Bachelor of Arts Degree from Elphinstone College in Bombay.

9.    I was married in 1978 to Ramesh Jethwa ("**Ramesh**").

10.    Ramesh was an electronic engineer who came to the United States of America in 1972 with $8.00.  He obtained a job with the State of Michigan and lived in Haslett which is a suburb of Lansing, the State Capital of Michigan.

11. Ramesh studied electronic engineering at Michigan State University. After graduation, he initially got a job with Bectel in Rahway, New Jersey before moving back to Lansing, Michigan.

12. We had three (3) children in Michigan.

13. We worked at and eventually bought a dry-cleaning business in East Lansing which we sold in 1989.

14. In or about 1990, we moved back to New Jersey.

15. Initially, we lived in Ledgewood, Morris County, New Jersey and in 1990 bought a Burger King® located at the Willowbrook Mall in Wayne. This store closed in or about 2002.

16. Next, in approximately 1992, we purchased the Burger King® Store located at 12-14 Spruce Street in Paterson, New Jersey, which is the subject of a separate Chapter 11 case filed contemporaneously herewith. *See In re J.F.M. 6090, Inc.*; Case No. 26-15123 ("**6090**").

17. In approximately 1994-1996, we sought to open a Burger King® at Short Hills Mall which eventually became an Everything Yogurt Salad Cafe. This cost approximately $750,000 and was unsuccessful.

18. Next, in approximately 1999, we bought a Burger King® in Secaucus at Mill Creek Mall. This store closed in approximately 2004.

19. In December 1998, we purchased our primary residence 194 Eileen Drive in Cedar Grove, New Jersey, where I have lived for approximately 28 years. My residence has two (2) mortgages totaling approximately $600,000.

20. In 2000, we purchased and built a Burger King® in Haledon, New Jersey. We sold that property in December 2025 for approximately $4.5 million. All of the net proceeds were paid to First Franchise Capital Corp. ("**FFCC**").

3

21.    In 2002-2004, we purchased the building and rights to operate a Burger King® on Hamburg Turnpike in Wayne. We also sited a Popeye's at the location in 2008. That property filed Chapter 11 bankruptcy in 2023 and closed. *See In re JFM Hamburg LLC*, Case No. 23-10057 (JKS). The Hamburg Chapter 11 was the subject of a settlement agreement which was approved and the proceedings dismissed.

22.    We owned two (2) Dunkin Donuts in Paterson beginning in 2003-2004. These stores were sold in 2019 for approximately $1.8 million.

23.    In 2010, we purchased a Burger King® in Sparta, which location is the subject of this Chapter 11 case. As part of that transaction, we purchased a store in West Nyack, New York which has since closed.

24.    In 2006, we purchased a Burger King® in Spring Valley, New York for approximately $600,000, which is the subject of a separate Chapter 11 case filed contemporaneously herewith. *See In re JFM Spring, LLC*; Case No. 26-15124 ("**JFM Spring**").

25.    In 2011, Jethwa Management hired Mayank Patel as Finance Controller. Mr. Patel continues to serve with distinction. His rate of compensation is $78,000 per annum.

26.    The three (3) remaining stores have gross sales of the following approximate amounts: Paterson – approximately $2 million annually; Spring Valley - approximately $2 million annually; and Sparta – approximately $1 million annually.

27.    We owe New Jersey and New York sales tax of approximately $800,000 for all there (3) stores and some of the residual stores.

28.    Burger King® asserts it is owed royalties of approximately $590,000 with regard to the remaining stores.

29.    Ramesh died suddenly on December 19, 2018.

## THE DEBTOR'S MANAGEMENT

30.    JFM Sparta is a New Jersey limited liability company and operates from its location at 49 Sparta Avenue N., Sparta, New Jersey 07871 ("**Sparta Location**").

31.    I own 100% of JFM Sparta's membership interests and Jethwa Management LLC owns 50% of the membership interests.  I am the sole member of Jethwa Management LLC.

## BACKGROUND OF THE DEBTOR

32.    JFM Sparta is a fast-food restaurant specializes in flame broiled burgers and other items.  JFM Sparta operates as a Burger King® pursuant to a franchise agreement.

33.    The Sparta Location is the subject of a ground lease at $10,427.20 per month.  The current lease is in place through 2033 with four renewal terms through 2053.  The Debtor leases the land from DJB Realty, LLC.

34.    JFM Sparta employs approximately 14 employees, including a restaurant manager and various hourly employees.

35.    JFM Sparta has passed all state and local inspections and there are no pending fire code, health or other violations.

## THE DEBTOR'S ASSETS

36.    JFM Sparta's assets consist of a restaurant operation including kitchen equipment, food stuffs, machinery, tables and chairs.

## CIRCUMSTANCES LEADING TO BANKRUPTCY

37.    I was attempting to negotiate a consensual sale of the Spring Valley and Paterson operations but the amounts involved would not resolve the remaining debts with FFCC.

38.    JFM Sparta believes it can implement a cost saving by eliminating the Burger King® royalties and mandated third-party vendors and promotions and discounts.

39.    Despite these operational issues, JFM Sparta is confident that through the Chapter 11 process, it can reorganize and restructure its debts based upon its strong past performance and market experience.

## CAPITAL STRUCTURE

### Secured Debt

#### A. First Franchise Capital Corporation

40.    On or about July 14, 2017, FFCC and Falls View, JFM Sparta Properties, LLC ("**JFM Sparta Properties**"), JFM Rochelle 13534 L.L.C. ("**JFM Rochelle**"), JFM Nyack, LLC ("**JFM Nyack**"), JFM Haledon Properties, LLC ("**JFM Haledon Properties**"), JFM Carlstadt Properties, L.L.C. ("**JFM Carlstadt Properties**"), JFM Wayne LLC ("**JFM Wayne**"), 6090, JFM Spring Properties, LLC ("**JFM Spring Properties**"), JFM Rochelle Properties, LLC ("**JFM Rochelle Properties**"), JFM Haledon LLC ("**JFM Haledon**"), JFM Carlstadt 13850, L.L.C. ("**JFM Carlstadt 13850**"), JFM Wayne Properties, LLC ("**JFM Wayne Properties**"), JFM Spring, and the Debtor (collectively, the "**Borrowers**") executed a Master Loan Agreement (the "**Loan Agreement**").

41.    The Loan Agreement was subsequently modified on July 8, 2019, April 5, 2020, June 3, 2020 and April 9, 2021.

42.    Pursuant to the Loan Agreement, as modified, FFCC issued three loans to the Borrowers for the Borrowers' use in operating approximately seven restaurant locations in two states franchised by Burger King®.

43.    Pursuant to the Loan Agreement, as modified, FFCC issued three loans to the Borrowers for the Borrowers' use in operating approximately seven restaurant locations in two states franchised by Burger King®.

44.     Specifically, on or about July 14, 2017, Borrowers executed and delivered to FFCC a secured promissory note in the original principal amount of $3,800,000.00 ("**Note A**").

45.     On or about July 14, 2017, Borrowers executed and delivered to FFCC another secured promissory note in the original principal amount of $3,350,000.00 ("**Note B**").

46.     On or about April 9, 2021, Note B was amended and restated by virtue of an Amended and Restated Secured Promissory Note in the original principal sum of $2,282,171.10 ("**Amended Note B**").

47.     On or about April 19, 2021, Borrowers executed and delivered to FFCC a third secured promissory note in the original principal amount of $133,500.00 ("**Note C**").

48.     In total, FFCC loaned Borrowers $7,283,500.00 in original principal pursuant to the Loan Agreement - as originally executed and then amended or modified from time to time - and the Notes.

49.     Pursuant to the Loan Agreement and to secure the Obligations, the following Security Agreements were executed in favor of FFCC: (a) Security Agreement dated as of July 14, 2017 from Falls View with respect to the collateral described therein; (b) Security Agreement dated as of July 14, 2017 from JFM Sparta Properties with respect to the collateral described therein; (c) Security Agreement dated as of July 14, 2017 from JFM Rochelle 13534 with respect to the collateral described therein; (d) Security Agreement dated as of July 14, 2017 from JFM Nyack with respect to the collateral described therein; (e ) Security Agreement dated as of July 14, 2017 from JFM Haledon Properties with respect to the collateral described therein; (f) Security Agreement dated as of July 14, 2017 from JFM Carlstadt Properties with respect to the collateral described therein; (g) Security Agreement dated as of July 14, 2017 from JFM Wayne with respect to the collateral described therein; (h) Security Agreement dated as of July 14, 2017 from JFM

Spring with respect to the collateral described therein; (i) Security Agreement dated as of July 14, 2017 from JFM Spring Properties with respect to the collateral described therein; (j) Security Agreement dated as of July 14, 2017 from JFM Rochelle Properties with respect to the collateral described therein; (k) Security Agreement dated as of July 14, 2017 from JFM Haledon with respect to the collateral described therein; (l) Security Agreement dated as of July 14, 2017 from JFM Carlstadt 13850 with respect to the collateral described therein,; (m) Security Agreement dated as of July 14, 2017 from JFM Wayne Properties with respect to the collateral described therein; (n) Security Agreement dated as of July 14, 2017 from the Debtor with respect to the collateral described therein; and (o) Security Agreement dated as of July 14, 2017 from 6090 with respect to the collateral described therein (collectively, the "**Security Agreements**").

50.    FFCC alleges that these security interests[1] were perfected by virtue of the filing of UCC Financing Statements.

51.    In addition to the Security Agreements, the following guaranties were executed in favor of FFCC: (a) Guaranty dated July 14, 2017, executed by me ("**Guaranty 1**"); and (b) Guaranty dated July 14, 2017, executed by Jethwa Management ("**Guaranty 2**" and, collectively with Guaranty 1, the "**Guaranties**").

52.    Pursuant to Guaranty 2 and to secure the Obligations, Jethwa Management executed a Security Agreement in favor of FFCC dated as of July 14, 2017, with respect to the collateral described therein (the "**Guaranty Security Agreement**").    FFCC asserts that the Guaranty Security Agreement is secured by a UCC-1 filing.

53.    Due to COVID-19, the Borrowers fell out of compliance with the Loan Agreement.

---

[1] Collectively, FFCC's collateral under the relevant agreements shall be referred to as the "**FFCC Collateral**".

8

54.    On February 23, 2022, FFCC and Borrowers entered into a Forbearance Agreement providing the Borrowers through June 9, 2022 to satisfy certain conditions regarding the existing defaults.

55.    By virtue of a Second Forbearance Agreement dated as of May 20, 2022, the Borrowers were provided through July 9, 2022 to satisfy certain conditions regarding the existing defaults.

56.    By virtue of a Third Forbearance Agreement dated as of July 29, 2022, the Borrowers were provided through October 9, 2022 to satisfy certain conditions regarding the existing defaults.

57.    The Third Forbearance Agreement required the Borrowers to pay all of the Obligations on or before October 9, 2022.

58.    As a result of these defaults, on October 2, 2023, FFCC filed a complaint in Superior Court of New Jersey, Bergen County, Law Division commencing an action captioned *First Franchise Capital Corporation v. Falls View, LLC* at Docket No. BER-L-5271-23 (the "**State Court Action**").

59.    On August 8, 2024, the State Court entered a default judgment against the Borrowers, including the Debtor, in the amount of $6,600,050.98 plus post-judgment interest (the "**Judgment**").

60.    On December 18, 2025, Borrower Haledon Properties, LLC sold certain real estate and paid FFCC $4,194,310.96 from the proceeds of the sale.

61.    On April 29, 2026, FFCC filed a Motion on Short Notice to Appoint Receiver in Aid of Execution Pursuant to N.J.S.A. 2A:17-66 (the "**Receiver Motion**"). The Receiver Motion was scheduled to be heard on May 8, 2026.

9

62.     After applying the amount received, FFCC asserts that the balance of the Loans was $3,259,108.17 as of March 2, 2026.

## B. The Small Business Administration

63.     On August 30, 2020, the U.S. Small Business Administration ("**SBA**") filed a UCC-1 against the Debtor.  The SBA asserts a lien in, amongst other things, the Debtor's inventory, equipment, and accounts.

64.     The SBA is owed approximately $150,000.

## Unsecured Debt

65.     JFM Sparta has always had strong and mutually beneficial relationships with its trade vendors.  These claims are for the delivery of goods and services to JFM Sparta, which are used in the operation of the business.  These creditors are essential to JFM Sparta's business.

66.     In addition, Burger King® asserts that it is owed fees in the approximate amount of $295,000.

## THE DEBTOR'S CHAPTER 11 FILING

67.     JFM Sparta filed a voluntary Chapter 11 petition on May 8, 2026 (the "**Petition Date**").  JFM Sparta intends to continue operating its business.  JFM Sparta proposes to use its cash and future revenues in accordance with the debtor-in-possession operating budget, which is annexed to the cash collateral motion as **Exhibit A**.

## REORGANIZATION PURPOSE

68.     JFM Sparta intends to continue operating its business in the ordinary course and needs the breathing room provided by the Bankruptcy Code in order to continue to operate effectively.  The goal is to maximize the value of JFM Sparta's assets and ongoing business operations. JFM Sparta has a viable business.

10

## FIRST DAY MOTIONS

69.     Concurrently with the filing of its chapter 11 petition, JFM Sparta has filed certain motions and proposed Orders (collectively, the "**First-Day Orders**").  JFM Sparta requests this Court enter each of the First-Day Orders described below, as each is critical to JFM Sparta achieving a successful result in its chapter 11 case for the benefit of all parties in interest.

**A. Motion for an Order Authorizing the Interim and Final Use of Cash Collateral**

70.     JFM Sparta seeks entry of an order authorizing the interim and final use of Cash Collateral and submits further that FFCC will not be harmed by the use of the Cash Collateral because it is significantly oversecured.  Cash Collateral will be used solely in accordance with the budget annexed to the motion.

71.     Use of cash collateral is imperative as FFCC has a blanket lien on JFM Sparta's inventory, deposit accounts and other assets.  Without the use of cash, JFM Sparta will be unable to fund essential payments, including payroll.

**B. Motion for an Interim Order and a Final Order (i) Prohibiting Utility Companies From Discontinuing, Altering, or Refusing Service; (ii) Deeming Utility Companies to Have Adequate Assurance of Payment; and (iii) Establishing Procedures for Resolving Requests for Additional Assurance Pursuant to 11 U.S.C. §§ 105(a) and 366**

72.     JFM Sparta seeks entry of (i) an Interim Order, and (ii) a Final Order, pursuant to sections 105(a) and 366 of the Bankruptcy Code, (a) prohibiting the utility companies from discontinuing, altering or refusing service to JFM Sparta, except as set forth herein, (b) deeming the utility companies adequately assured of future performance on the basis of payment of a two-week security deposit, and (c) establishing procedures for resolving requests for additional assurance of payment.

73.     Uninterrupted utility services are essential to JFM Sparta's ongoing operations and, therefore, to the success of JFM Sparta's chapter 11 efforts.  Indeed, any disruption to JFM Sparta's

11

businesses by virtue of the cessation of utility services by the utility companies will bring JFM Sparta's operations to a halt.

74.    In accordance with Bankruptcy Code section 366(c)(1)(A), JFM Sparta proposes to provide additional assurance of payment to each utility company.

**C.  Motion for Authority to Continue to Use Existing Bank Accounts and Business Forms Pursuant to 11 U.S.C. §§ 105(a) and 363(c)**

75.    Currently, JFM Sparta has two (2) bank accounts with Provident Bank (collectively, the "**Bank Account**").  In the ordinary course of its operations, JFM Sparta receives deposits and issues checks, wire transfers and ACH transfers into and out of its Bank Account.

76.    JFM Sparta also seeks authority to continue to use their prepetition business forms including, but not limited to, letterhead, invoices, checks, *et cetera* (collectively, the "**Business Forms**"), without reference to their status as debtors-in-possession.  Requiring JFM Sparta to immediately print new Business Forms would be burdensome, expensive, and disruptive.  JFM Sparta will, however, either print or stamp "Debtor-in-Possession" on their checks, and when they replace stock, will obtain checks marked "Debtor-in-Possession."

**D.  Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 507(a)(4) and 507(a)(5): (i) Authorizing Debtor to Pay Certain Pre-Petition Wages, Salaries, Withholding and Payroll-Related Taxes for Pre-Petition Periods; (ii) Directing All Banks to Honor Pre-Petition Checks for Payment of Pre-Petition Employee Obligations; and (iii) Authorizing Debtor to Honor Workers' Compensation and Certain Employee Benefit Obligations**

77.    JFM Sparta seeks authorization to (i) pay employee claims for wages, salaries, commissions, contractual compensation, sick pay, personal pay, holiday pay, other accrued compensation, withholding and payroll related taxes for the Current Pay Period (as defined therein); (ii) direct all banks to honor pre-petition checks for payment of employee obligations in

12

the Current Pay Period; and (iii) honor workers' compensation and certain employee benefit obligations.

78.     Any payments in respect of prepetition wages, salaries, commissions, and other compensation and benefit programs will not exceed the employee limitation for the Current Pay Period allowable as a priority claim under Bankruptcy Code sections 507(a)(4) and (5).

79.     JFM Sparta believes that the payment of the employee obligations is critical in order to maintain the morale of the employees during the pendency of the chapter 11 case and to ensure that they remain with JFM Sparta.

## RESOLUTION OF SPECIAL MEETING OF
## MEMBERS OF JFM SPARTA, LLC

I hereby certify that at a duly called and special meeting of JFM Sparta, LLC, a New Jersey limited liability company (the "**Company**"), held on the 8th day of May 2026, the following Resolutions were proposed and unanimously adopted by all Members present:

**RESOLVED,** that the aforementioned Company, in view of its financial condition, be and is hereby authorized and directed on behalf of the Company, to file a petition under chapter 11 of the Bankruptcy Code and retain the services of counsel and other professionals, as necessary, for the purposes of preparing, filing, and prosecuting a petition under chapter 11, and to take all steps necessary and related thereto, and that Ranjana Jethwa, Managing Member of the Company, is hereby authorized to execute the Petition and any other pleadings or documents they deem necessary in connection with the Company's chapter 11 case; and it is further

**RESOLVED,** that Ranjana Jethwa, Managing Member of the Company, of the Company, be and hereby is authorized and directed in the name and on behalf of the Company, to prepare, execute, issue, deliver, and/or file any and all such further agreements, certificates, instruments, letters, and pleadings and other documents, and to perform any and all such acts, as they may deem necessary or desirable to effectuate fully the foregoing Resolution; and it is further

**RESOLVED,** that the Company is authorized to retain the law firm of Trenk Isabel Siddiqi & Shahdanian, P.C. to represent the Company in connection with the Chapter 11 filing.

In certification hereof, I do set my hand and seal this 8th day of May, 2026.

**JETHWA FOODS, LLC**

_____
Ranjana Jethwa

By: _____
Ranjana Jethwa
Managing Member

4887-2133-5698, v. 1